Hallen v. Smith.

HILDEGARDE HALLEN, Appellant, v. JAMES H. SMITH and JOHN S. LEAHY, Appellants.

Division One, July 31, 1924.

1. **FALSE IMPRISONMENT: Conspiracy: Insufficient Evidence.** Plaintiff was a stenographer and notary public in the office of a real estate dealer who had indorsed to himself a cashier's check for twelve thousand dollars payable to another, deposited the amount to his credit in a trust company, and given her a check for five hundred dollars with directions to cash it and pay some bills. The forgery was brought to the attention of the police by the trust company, and the payee of the check, becoming anxious, employed an attorney, who was his son-in-law, to look after his interest. Two detectives, who had been assigned to the case, went to the house of plaintiff and her mother, and took them in a car to the police station for the purpose of getting a statement from her as to what she might know about the forger, and certain of his alleged irregular transactions, and some acts of her own. On the way to the station the officers called said attorney, told him that they were going to take her statement, and asked him if he desired to be present, and he went with them and heard her statement. In her petition she alleges that the two detectives, without warrant or authority of law, forced their way into the house, "and with physical violence took her to the police station," detained her several hours against her will, and ordered her "to answer questions and to write letters and signatures in imitation of the handwriting" of the forger, "all of which she did against her will and under threats that she would be sent to the penitentiary if she did not," and that all of said acts were done by the officers and said attorney under and in furtherance of a conspiracy between them and the chief of police, the president of the police board and the officers of the trust company. The attorney was present at the police station at the time she made her statement, but was not present at the house

when the officers arrested her, and knew nothing about the matter until they called him, nor did he have anything to do with her subsequent prosecution or imprisonment. *Held*, that there is a total failure of proof of a conspiracy between said attorney and the police officers, and he was not responsible for what was done save and except for his conduct at the police station at the time she made her statement; and his plea of misjoinder of defendants and misjoinder of causes, in a suit based upon (1) false arrest, (2) malicious prosecution and (3) false imprisonment, brought against him, the police officers and the trust company, should have been sustained.

2. **MISJOINDER: Pleading: Waiver: Conspiracy.** A plea of misjoinder, either of causes of action or of parties defendant, is a plea in abatement of the action. If the misjoinder appears on the face of the petition, the plea is by demurrer; if it does not so appear, it can be raised by answer, but since there can be but one answer the plea is not waived by joining it with other pleas in the answer. If the plea is properly made by answer, it must be tried out under the issues made, and if sustained by the facts the judgment should be dismissal of the petition or cause, whether the plea raises an issue of law or an issue of fact. And where the petition charges a conspiracy between an attorney and other defendants, and there is a total failure of evidence of such conspiracy, his plea of misjoinder of defendants should be sustained, and the jury directed to return a verdict for him.

3. **NONSUIT: Setting Aside: Amendment of Petition: Abandonment.** A plaintiff does not abandon his cause by requested and being granted permission to amend his petition to conform to the facts— for instance, by asking to so amend as to allege his damages to be fifty thousand dollars instead of fifteen thousand dollars, as it had been throughout the trial—and the court does not err in setting aside an involuntary nonsuit taken when a demurrer has been sustained on the ground that such amendment was an abandonment.

Headnote 1: Actions, 1 C. J. par. 214; False Imprisonment, 25 C. J. pars. 122, 156; Headnote 2: Pleading, 31 Cyc. 157, 177, 186, 188 (1926 Anno), 292; Headnote 3: Dismissal and Nonsuit, 18 C. J. par. 150 (1926 Anno); Pleading, 31 Cyc. 417, 465.

Appeal from St. Louis City Circuit Court.—*Hon. Moses Hartmann,* Judge.

AFFIRMED *in part* and REVERSED *in part.*

*Randolph Laughlin* for plaintiff.

(1)   Plaintiff's evidence tends to show concerted action between Smith and Leahy at the police station on the night of March 1, 1909. They appeared there jointly, persecuted her jointly, and jointly threatened her with the penitentiary unless she would consent to do their bidding, to act as a "lady detective" to spy on Mrs. Fortner, to obtain evidence from her as to Fortner's whereabouts, and to report to Smith and Leahy. Such evidence was competent, and tended to prove a conspiracy. The plaintiff may either prove a conspiracy which renders the acts of the conspirators admissible in evidence, or she may prove the acts of the different persons and thus prove a conspiracy. Tucker v. Hyatt, 151 Ind. 232; Patch Mfg. Co. v. Protective Lodge, 77 Vt. 294; Spiess v. People, 122 Ill. 7; 5 R. C. L. 1103-1104, sec. 53, notes 10, 11 and 12. (2)   There being evidence tending to prove a conspiracy, it follows that any act done by Smith in pursuance of the plan of such conspiracy, with reference to its common object was, and is, in contemplation of law, the act of Leahy, and Leahy is responsible for everything done by Smith which the execution of the common design made probable as a consequence, even though such consequence was not intended as a part of the original design or common plan. McManus v. Lee, 43 Mo. 206; U. S. v. Lancaster, 44 Fed. 896; Spiess v. People, 122 Ill. 1; State v. Bersch, 276 Mo. 397; State v. Shout, 263 Mo. 360; Cooper v. Johnson, 81 Mo. 488. (3)   The connection between Smith and Leahy having been established by plaintiff's testimony as to their concert of action and statement at the police station, then whatever was done in pursuance of the conspiracy by one of the conspirators is to be treated as the act of both, and both are liable therefor, irrespective of the fact that they did not actively participate therein, or of the extent to which they benefited thereby. State v. Roberts, 201 Mo. 728; State v. Bobbitt, 228

Mo. 266; State v. Fields, 234 Mo. 623; Doremus v. Hennessy, 176 Ill. 608.; Purington v. Hinchcliff, 219 Ill. 159; Page v. Parker, 43 N. H. 363; Patch Mfg. Co. v. Protective Lodge, 77 Vt. 294; Fountain Co. v. Roberts, 92 Wis. 345; Zinc Co. v. Schulsburg Bank, 103 Wis. 125.   (4)   There being evidence tending to prove a conspiracy, it follows that whether or not the acts of Smith, done on the night of March 5th, were done in furtherance of the common design, or whether they were the natural and probable consequences flowing from the execution of the common design, was a question for the jury.  Spiess v. People, 122 Ill. 1; Powers v. Commonwealth, 110 Ky. 386; 53 L. R. A. 243; Bauers v. State, 24 Tex. App. 542; 5 R. C. L. 1065, notes 11 and 12; State v. Shout, 263 Mo. 374.   (5) It results from the foregoing that plaintiff had the right to go to the jury on the third count as to both Smith and Leahy.  Therefore the court erred in giving the instruction which forced the nonsuit, and erred in overruling plaintiff's motion to set aside the nonsuit.

. *Charles P. Williams* for defendant Leahy.

(1)   The granting of Smith's demurrer to the evidence on the third count constituted absolutely no reason for granting a new trial against Leahy on the first count. (2)   The court erred in holding that in a case of trespass against joint and several defendants the jury was bound to agree with respect to all and that otherwise their verdict was a nullity.  Marler v. Ayliffe, Croke (James) 134; Winn v. Railroad, 245 Mo. 413; Hunt v. Simonds, 19 Mo. 588;   Medlin Milling Co. v. Moffat Co., 218 Fed. 690; James v. Evans, 149 Fed. 140; State ex rel. v. Tate, 109 Mo. 265; Kleiber v. Railroad, 107 Mo. 240; Westcott v. Bridwell, 40 Mo. 146; Rude v. Mitchell, 97 Mo. 365; La Riviere v. La Riviere, 97 Mo. 80; Stotler v. Railroad, 200 Mo. 149; Clark v. Railroad, 234 Mo. 435; Needles v. Burke, 98 Mo. 476; Lockwood v. Bartlett, 7 N. Y. Supp. 481, 130 N. Y. 340; Allison v. Darton, 24 Mo. 340; Parker v. Moore,

29 Mo. 218; Fenwick v. Logan, 1 Mo. 402; Ferguson v. Thacher, 79 Mo. 511; Berkson v. Ry. Co., 144 Mo. 211; State ex rel. v. Blakemore, 275 Mo. 703. (3) Under our system of pleading, it is fundamental that a count against A and B cannot be joined with a count against A. Trefny v. Eichenseer, 262 Mo. 436; Doan v. Holly, 25 Mo. 357; Liney v. Martin, 29 Mo. 28; Jamison v. Culligan, 151 Mo. 410; Beattie Mfg. Co. v. Geradi, 166 Mo. 142. (4) The code answer setting up misjoinder is a statutory plea in abatement of the whole action. Tidd's Practice, star page 642 (3 Am. Ed. 1856); 1 Ency. Pleading & Practice, p. 30; 23 Cyc. p. 773; LaGrande v. Portland Public Market, 58 Ore. 126; Clark v. Latham, 25 Ark. 16; Larco v. Clements, 36 Cal. 132; Cushman v. Savage, 20 Ill. 330; Blackburn v. Watson, 85 Pa. St. 241; Southmayd v. Jackson, 15 N. W. (Misc.) 476. (5) The plaintiff was not below and is not here, by reason of that fundamental misjoinder, entitled to "any new trial." She has had her day in court on the issue of misjoinder so far as this action is concerned.

GRAVES, J.—These are cross-appeals and were argued and submitted together. Pleadings and facts can well be commingled in a short outline of the case. Plaintiff had, for more than a year prior to the incidents involved in this action, been a stenographer and notary public in the real estate brokerage office of one M. Dwight Fortner. A few days before the happenings which gave rise to the instant suit Fortner left for parts unknown, but was later located in Paris, France, and brought back to Missouri, and served a term in our penitentiary. The day Fortner left (ostensibly for Chicago, but in fact for New Orleans) he gave plaintiff a check for $500 on the St. Louis Union Trust Company, with directions to cash it and pay some bills. This the plaintiff did upon the next day, and after paying the bills, gave the remainder of the money to Fortner's wife. Just prior to his departure Fortner had been trying to

effect a sale of some apartments owned by Henry C. Tulley, to F. A. Steer. Mr. Steer had procured from the Third National Bank of St. Louis a cashier's check for $12,000, to be used in the purchase of the apartments. This check was payable to F. A. Steer, and Mr. Steer had endorsed it over to Henry C. Tulley, and thus indorsed turned it over to Fortner. The plaintiff had seen this check, and knew of the attempted real estate deal. Tulley declined to receive the check, being unwilling to accept Steer's proposed price. Four or five days after Fortner's disappearance it was discovered that someone (presumably Fortner) had forged the name of Tulley to an indorsement upon this check, and it was deposited to Fortner's credit in the St. Louis Union Trust Company. It is claimed that Fortner had tried to get Tulley to indorse the check in order (as he said) to get Steer's money back from the Third National Bank, but Tulley declined to indorse it. When it was discovered that the indorsement had been forged, or was thought to have been forged, Mr. A. C. Stewart was counsel for the Trust Company and also President of the Board of Police Commissioners in the City of St. Louis. The matter was brought to the attention of the chief of police by the Trust Company. The investigation of the matter was assigned to defendant Smith, the then chief of detectives of St. Louis. During the investigations Smith consulted with Stewart, and the investigations resulted in the discovery of other supposed forgeries by Fortner. Plaintiff, as notary public, had taken and attached certificates of acknowledgments to instruments, wherein it was said that the persons denied that they had ever appeared before her, or given such acknowledgments.

Mr. Steer, becoming anxious about his $12,000, employed defendant Leahy, a lawyer and his son-in-law, to look after his interest with the St. Louis Union Trust Company. Steer had learned that Fortner had checked out practically all of the $12,000 deposit, and the $500 check spoken of above was paid out of such deposit.

Leahy called upon Stewart in the interest of his client, Steer. Smith was present at one or more of these meetings. Stewart, however, assured Leahy that Steer would be paid as soon as it was definitely determined that Tulley's name had been forged. All this was before March 1, 1909.

The police, under the lead of defendant Smith, on the night of March 1st undertook to and did get a statement from plaintiff, after getting her and her mother to a police station. At this interview Leahy was present, and participated as plaintiff claims. After the conclusion of the interview, plaintiff and her mother were returned to their home. The officers were trying to locate Fortner, and wanted to get what information they could from plaintiff. They also had knowledge at the time of the alleged false certificates.

The petition complains of three distinct transactions, in as many counts, (1) an alleged false imprisonment on March 1, 1909, (2) a malicious prosecution on March 6, 1909, and (3) an alleged false imprisonment on March 6, 1909.

The suit was originally brought against James H. Smith, A. C. Stewart, F. A. Steer, John S. Leahy and St. Louis Union Trust Company. The cause was dismissed as to Stewart and the Trust Company. Defendant F. A. Steer died and there was never a revivor as to him. In each count there is an alleged conspiracy charged to have existed between all of the said original defendants. At time of trial only Smith and Leahy were left to do battle. Certain details as to the course of procedure become material.

Defendant Leahy in his answer, among other things, pleaded a misjoinder of causes of action and of parties defendant. This plea constituted a part of his answer to each of the three counts in the petition. At every opportunity he urged this point, and vehemently urges it here. He was present at the transaction of March 1, 1909, but was not present at the other transactions

involved in counts two and three. Two weeks were spent in the trial of the case, and upon its submission to a jury a verdict was finally reached as to defendant Leahy, the details of which will be left to the opinion. The court at the conclusion of all the evidence sustained the demurrers to the evidence of both Smith and Leahy as to the third count of the petition, and such count was not submitted to the jury at all. Plaintiff voluntarily dismissed the second count of her petition upon the close of the whole case. The submission therefore was as to the first count only. As to this count the jury returned a verdict for defendant Leahy, but failed to agree upon a verdict as to defendant Smith, and the court declared a mistrial as to Smith, but the court expressly reserved the entry of judgment for Leahy until the whole case had been disposed of by verdict. Plaintiff filed her motion to set aside the involuntary nonsuit upon the third count, and to set aside the verdict for Leahy upon the first count. The court sustained plaintiff's motion to set aside the nonsuit so far as defendant Smith was concerned, but overruled it as to Leahy. The court sustained the order to set aside the verdict for Leahy, assigning in the record the following reasons:

"First: on the ground the court erred in sustaining defendant Smith's demurrer to the evidence;

"Second: on the third ground of plaintiff's motion that the verdict is not responsive to the issue;

"Third: on the ground that the court erred in giving instructions numbered 7, 8 and 11;

"Fourth: upon the twenty-first ground of said motion, because the court erred in excluding competent and material evidence offered by plaintiff and particularly the evidence in Leahy's deposition to the effect that he was and is worth substantially in excess of $250,000."

From such order made on plaintiff's motion the several appeals herein followed. Plaintiff was not satisfied as to the ruling against her on the third count, in that Leahy was left out of that count. Leahy objects to having

had his verdict set aside, and Smith has several objections, which will be noted later. This outlines the case, except as to the evidence, and that will be left to the opinion, in so far as it may be applicable to the points made.

I.   The plaintiff is strong upon allegations and weak on proof as to defendant Leahy, and we purpose to deal with appellants Smith and Leahy separately. The case was tried upon a fourth amended petition. Learned counsel for the plaintiff thus outlines the charges in the first count of the petition:

Conspiracy.

"The petition on which the cause was tried was in three counts. The first count was an action for false imprisonment (aggravated by assault) on March 1 and 2, 1909. It was alleged that the assault and imprisonment were begun by defendant Smith and one Murphy, who, without warrant or authority of law, forced their way into plaintiff's residence at night, and with physical violence took her to the police station; that at the police station she was detained for several hours against her will, and ordered to answer questions and to write letters and signatures in imitation of the handwriting of Mrs. Fortner, all of which she did against her will and under threats that she would be sent to the penitentiary if she did not; that all the acts at the police station were done by the defendants Smith and Leahy personally, and that all the acts set forth, both at the police station and before being taken there, were done under and in pursuance of a conspiracy."

Counsel should have gone further, and given the alleged conspirators, under whom Smith and Leahy were alleged to have acted. On this point his petition says:

"Plaintiff states that all the above acts at the police station were done by defendants James H. Smith and John S. Leahy personally; that all the acts above set forth, both at the police station and before being taken there, were done under and in furtherance of the aforesaid conspiracy between *all of the defendants* herein, wherein

they suggested, consented to, advised and agreed together and requested that the said acts be done, and said acts were done in pursuance of said combination and conspiracy.''

There is no proof of a conspiracy between Leahy and any other party. All of the evidence shows that Smith and Murphy (the officers) had plaintiff and her mother in a car and were taking her to the office for the purpose of getting a statement from her as to what she might know about M. Dwight Fortner, and certain of his alleged irregular transactions, as well as some acts of the plaintiff herself.

The officers say that the plaintiff (at her home) consented to go, but she says that she was forced to go. At any rate there is no evidence that Leahy had counseled or advised this, or that he knew of it, until the officers stopped on the road to the station, and called Leahy and told him that they were going to take the statement of the plaintiff and asked him if he desired to be present. The station was not far from where Leahy then lived. Leahy was present at the taking of the statement, having walked to the station, as he said. Leahy had nothing whatever to do with the proceedings covered by counts two and three of the petition. As said proof of the alleged conspiracy failed *in toto,* Leahy was not responsible for what was done, save and except for his conduct at the police station on the night of March 1, 1909. The answer of Leahy as to all counts pleaded misjoinder of causes of action. The plea is broad enough to cover misjoinder of defendants. This was pressed in every conceivable way from first to last. It was as often refused by the trial court. Of this status next.

II. Leahy in the answer to each count pleaded that he had no connection with any of the things pleaded in the second and third counts of the petition, and asked that the petition be dismissed as against him because of this

Misjoinder.    misjoinder of causes of action.  The evidence
sustains this plea.  That is to say, the plain-
tiff's evidence fails to show his connection with the mat-
ters involved in these two counts, and defendant's evi-
dence shows that he had no connection therewith.  In fact,
(as to counts two and three) plaintiff only tried to connect
Leahy through the alleged conspiracy, and the evidence
as to this having failed, there was no showing.  At the
close of plaintiff's case the defendant Leahy filed a motion
to dismiss the case as to him on the ground of misjoinder
of causes of action, as by his plea urged.  He also filed
motion for judgment for like reasons.  These were over-
ruled, and are the first matters for review here.

A plea of misjoinder, either of causes of action, or
parties defendant, is a plea in abatement of the action.

If misjoinder (either of cause of action, or of parties
defendant) appear upon the face of the petition the de-
fendant must demur.  [R. S. 1919, sec. 1226.]  The fourth
and fifth clause of this section of the statute reads:

"Or, fourth, that there is a defect of parties plaintiff
or defendant; or, fifth, that several causes of action have
been improperly united."

In this case the misjoinder (per force of the alleged
conspiracy) did not appear upon the face of the petition.
But such a situation is covered by Section 1230, Revised
Statutes 1919, which reads:

"When any of the matters enumerated in Section
1226 do not appear upon the face of the petition, the ob-
jection may be taken by answer.  If no such objection be
taken, either by demurrer or answer, the defendant shall
be deemed to have waived the same, excepting only the
objection to the jurisdicion of the court over the subject-
matter of the action, and excepting the objection that the
petition does not state facts sufficient to constitute a cause
of action."

The statute not only permits such answers, but our
court has fully recognized the force of the statute.  [Baker
v. Berry, 37 Mo. 306; State to use of Bradshaw v. Sher-

wood, 42 Mo. l. c. 184; State ex rel. Johnson v. Withrow, 108 Mo. l. c. 7.]

There can be no question of the right of Leahy to plead in the answer as he did. At common law. such a plea (one to abate the action) had to be tried before joinder upon the merits. [Bliss on Code Pleading (3 Ed.) sec. 345.] But our statute (Sec. 1224, R. S. 1919) provides that "the only pleading on the part of the defendant is either a demurrer or an answer," and for that reason such defendant may join all of his defenses in the one answer, whether they be in abatement or in bar. [Bliss on Code Pleading (3 Ed.) sec. 345; Little v. Harrington, 71 Mo. 390.] The learned author says:

"The Code requires the defendant either to demur or answer, and in his answer he is allowed to set up as many defenses as he may have. Only one answer is contemplated, and all the defenses which he elects to make must be embraced within it. Matter in abatement is as much a defense to the pending action as matter in bar, and to say that the defendant may reserve the latter until a trial shall have been had upon the issues in regard to the former, would interpolate what is not in the statute— would be inconsistent with its plain and simple requirements. At first the courts did not seem to perceive the change which had been made in this respect, and adhered to the common-law rule; but, with few exceptions, they now require the defendant, in his one answer, to make every defense upon which he relies, and they no longer regard the old rule, that a plea to the merits waives matter in abatement, provided the matter in abatement is pleaded at the same time."

The foregoing from Bliss on Code Pleadings had the express approval of this case in the Little case, supra.

If the plea in abatement in a case where misjoinder of actions is the matter involved, as here, is tried out under issues made, as here, and the plea be sustained by the facts, as here, then the judgment should be dismissal

of the petition or cause.   This Leahy asked and it was denied.   In this the trial court erred.

In 1 Tidd's Practice, side page 642, it is said: "The judgment for the defendant, on a plea in abatement, whether it be on an issue in *fact* or in *law,* is that the writ or bill be quashed."   [See also 1 Ency. Plead. & Prac. p. 30; LaGrande v. Portland Public Market, 58 Ore. l. c. 128; Blackburn v. Watson, 85 Pa. St. l. c. 244; Southmayd v. Jackson, 15 N. Y. Misc. l. c. 476; Cushman v. Savage, 20 Ill. 330; Larco v. Clements, 36 Cal. 132.]   In the La-Grande case, supra, the court says:

"Before the question thus suggested is determined, it is deemed proper to consider the form of judgment that should be rendered when a decision in favor of a defendant is given on a plea in abatement, and whether or not, after an issue of fact joined on the plea is decided in defendant's favor, the averments of a complaint thus challenged can over objection and exception be amended. Contemplating these inquires in the order stated, the rule is well settled that when an issue of fact or law is joined on a plea in abatement and found for the defendant, the judgment or decree required to be given is that the action or suit be dismissed.   [1 Chitty, Pl. 466; Gould Pl. (Hamilton's Ed.) 286; 1 Tidd's Pr. (Am. notes) 642; 1 Pl. & Pr. 30; 31 Cyc. 187; Clark v. Latham, 25 Ark. 16; Larco v. Clements, 36 Cal. 132; Cushman v. Savage, 20 Ill. 330.]"

This judgment of dismissal the defendant Leahy asked, and the court refused.   The court also refused to direct a verdict for defendant Leahy on this plea.   The only evidence that plaintiff offered on the matter of conspiracy was a written report of Smith to his superior. Smith on the stand said that there were errors in the report, and his oral testimony showed no conspiracy.   But the court rejected this report as evidence against Leahy, and to that ruling the plaintiff took no exception.   So, as said, this left the case wholly without evidence of a con-

spiracy, and plaintiff failed to show that Leahy had any thing to do with the transactions involved in counts two and three. In this situation the court should have said as a matter of law that there was a misjoinder of causes of action, and dismissed the cause under that plea of defendant Leahy. As to defendant Leahy, the judgment or order granting a new trial, is reversed and the cause remanded, with directions to enter up a judgment dismissing plaintiff's petition.

III. The defendant Smith complains of the action of the court in setting aside the involuntary non-suit as to count three of the petition. The only reason urged is that the plaintiff abandoned this count when she amended her petition in the first count thereof by alleging her damages to be fifty thousand dollars instead of fifteen thousand dollars, as it had been throughout the trial. When the court sustained the demurrer to the evidence as to the third count, as to both defendants, counsel for plaintiff said:

"In view of the rulings that have been made this morning, Your Honor, I want to ask the court's permission to amend the *ad damnum* clause of the first count of the petition, striking out the letters 'E E N' and substituting the 'Y,' so as thereby to change the prayer for the actual damages from fifteen thousand dollars to fifty thousand dollars, and I make that motion on these grounds."

This request was followed by a *resume* of the evidence of the plaintiff's damages as her counsel claimed appeared from the evidence. Defendant urges that this summing up covered the injuries and losses in all three counts. In a way this might be true, but it was within the discretion of the trial court to permit the amendment "in order to conform to the proof" as was asked by plaintiff.

We do not think this shows an abandonment of count three. This being the only matter urged by appellant Smith, the order and judgment is affirmed as to him. Just

what shape the case will be in when next taken up in the circuit court, it is not for us to determine now.

The cause is therefore reversed and remanded as to defendant Leahy, with directions to the circuit court to dismiss the plaintiff's petition as to said defendant Leahy, and as to defendant Smith the order and judgment is affirmed and the cause remanded. All concur.